## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW MARDEN, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>WEATHER GROUP TELEVISION, LLC,<br><br>           Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Dated: May 21, 2024

**REARDON SCANLON LLP**
James J. Reardon, Jr. (BBO #566161)
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel*
Max S. Roberts*
Victoria X. Zhou*
Kyle D. Gordon*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
       mroberts@bursor.com
       vzhou@bursor.com
       kgordon@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**PAGE**

NATURE OF THE ACTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

    I.      History And Overview Of The VPPA ................................................................ 2

    II.     Defendant Is A Video Tape Service Provider .................................................... 3

    III.    Defendant Discloses Consumers' Personally Identifiable Information To Third Parties ....................................................................................................... 5

        A.    Testing Reveals That Defendant Illegally Shares Class Members' PII And Viewing Information A Third Party, Twilio ........................................................................................................ 5

        B.    Defendant Discloses Class Members' E-Mail Addresses To Twilio ................................................................................................... 8

        C.    Defendant Discloses Class Members' Location Information To Twilio ................................................................................................... 9

        D.    Defendant Discloses Class Members' Video-Viewing Information To Twilio .............................................................................. 11

    IV.    Defendant Discloses Class Members' Personally Identifiable Information To Third Parties For The Purposes Of Marketing, Advertising, And Analytics ........................................................................................................ 12

    V.     Defendant Knowingly Discloses Class Members' PII To Segment .................... 15

    VI.    Experience Of Plaintiff .................................................................................. 16

THE PARTIES................................................................................................................. 17

JURISDICTION AND VENUE .......................................................................................... 18

CLASS ALLEGATIONS ................................................................................................... 19

CAUSES OF ACTION ...................................................................................................... 21

PRAYER FOR RELIEF .................................................................................................... 23

JURY DEMAND ............................................................................................................. 24

Plaintiff Matthew Marden ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action suit brought against Defendant Weather Group Television, LLC ("Defendant") for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

2.     The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers."  S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent."  *Id.*

3.     The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710.

4.     Defendant provides access to "local news and weather, over 400 channels and 1000s of Hollywood movies,"[1] and/or other pre-recorded videos through its iOS[2] and Android[3] applications (the "App"), as well as its website[4] (the "Website") (together with the Apps, "Local Now Service").

---

[1] APPLE APP STORE, LOCAL NOW: NEWS, TV & MOVIES, https://apps.apple.com/us/app/local-now-news-tv-movies/id1117556939.

[2] *Id.*

[3] GOOGLE PLAY STORE, LOCAL NOW: NEWS, TV & MOVIES, https://play.google.com/store/apps/details?id=com.weathergroup.localnow.

[4] LOCAL NOW, LOCAL NOW: NEWS, TV & MOVIES, https://localnow.com/.

5.     Unbeknownst to Plaintiff and Class Members, Defendant knowingly and intentionally discloses Local Now users' personally identifiable information—including a record of every video viewed by the user—to an unrelated third party.  By doing so, Defendant is violating the VPPA.

6.     Plaintiff brings this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

**FACTUAL BACKGROUND**

**I.     HISTORY AND OVERVIEW OF THE VPPA**

7.     The impetus for the VPPA begins with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court.  During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then published that record.  Congress responded by passing the VPPA, with an eye toward the digital future.  As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Pratik Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone.  I think that is wrong.

S. Rep. 100-599, at 5-6 (cleaned up).

8.     In 2012, Congress amended the VPPA, and in so doing, reiterated the VPPA's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones."  S. Rep. 112-258, at 2.

9.     The VPPA prohibits "[a] video tape service provider who knowingly discloses, to

any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

## II.    DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER

10.    Local Now "provides localized news, weather, sports, traffic, and entertainment, produced by various leading news organizations, in more than 225 markets across the U.S. It offers more than 450 free streaming channels, including a Local Now channel in every DMA [(Designated Market Area)] in the country, as well as more than 18,500 movies, TV shows, and documentaries."[5]

11.    Although "all of the movies, TV shows, streaming channels and[] everything [else] on the Local Now Service is completely free,"[6] Defendant allows users that create accounts to receive a "personalized Local[] Now experience"[7] and create a "watchlist"[8] of content they intend

---

[5] PR Newswire, Allen Media Group's Free-Streaming Service 'Local Now' Launches Three NBC News Fast Channels, https://www.prnewswire.com/news-releases/allen-media-groups-free-streaming-service-local-now-launches-three-nbc-news-fast-channels-301727187.html (last accessed Apr. 30, 2024).

[6] Weather Group, Local Now, https://www.weathergroup.com/brands/local-now (last accessed Apr. 30, 2024).

[7] Local Now, Sign Up to Local Now, https://auth.localnow.com/u/register (last accessed Apr. 30, 2024).

[8] Local Now, Watchlist, https://localnow.com/account/watchlist (last accessed Apr. 30, 2024).

to view later, among other benefits.[9]  Accounts are free of charge, but individuals must provide Defendant with their e-mail address during the sign-up process.[10]  In addition, users may add their first and last name to their Local Now "profile."[11]

12.    Defendant's "free streaming app … is made possible due to [their] advertisers."[12] That is, Defendant monetizes its extensive viewership by selling the opportunity for advertisers to "[p]artner[] with Local Now,"[13] reach App and Website consumers, and thus become "part of [a] target audience's daily routine, no matter where they are."[14]

13.    Much of this targeting is based on a user's location, which Defendant prompts users to provide immediately upon accessing the Website:



---

[9] LOCAL NOW, LOCAL NOW SUPPORT, https://support.localnow.com/support/home.

[10] LOCAL NOW, SIGN UP TO LOCAL NOW, https://auth-v2.localnow.com/u/register.

[11] LOCAL NOW, PROFILE, https://localnow.com/account/profile.

[12] LOCAL NOW, WHY ARE THERE SO MANY ADS?, https://support.localnow.com/support/solutions/articles/36000400508-why-are-there-so-many-ads.

[13] LOCAL NOW, ADVERTISING ON OTT, WEB & MOBILE, https://localnow.com/pages/ott-web-and-mobile-advertising-with-local-now/.

[14] *Id.*

14.     The Local Now App was released in or around June 2016.[15]  It is estimated that the Local Now Android application has been downloaded approximately 500,000-1 million times.[16] While similar figures are unavailable for the Local Now iOS application and the Website, it is estimated that there are approximately 19,700 "active users"[17] of Local Now on iOS as of early 2024 (*i.e.*, "people [who] engage with [the] app each month"[18]).  In addition, third party rankings estimate there were 70,500 visitors to the Website in April 2024 alone.[19]

## III.    DEFENDANT DISCLOSES CONSUMERS' PERSONALLY IDENTIFIABLE INFORMATION TO THIRD PARTIES

### A.    Testing Reveals That Defendant Illegally Shares Class Members' PII And Viewing Information To A Third Party, Twilio

15.      Prior to the commencement of this action, Plaintiff's counsel retained a private research company to conduct a dynamic analysis of the Apps and Website.  A "dynamic analysis" records the transmissions that occur from a user's device.

16.     The private researchers tested what information (if any) Defendant discloses when a user watches a pre-recorded video on either the Local Now Website or the Local Now App.

17.     The analysis first established that Defendant incorporates multiple "application programming interfaces" ("APIs") into the Website and App.

---

[15] SENSORTOWER, LOCAL NOW: NEWS, TV & MOVIES, https://app.sensortower.com/overview/com.weathergroup.localnow?country=US.

[16] *Id.*

[17] DATA.AI, PERFORMANCE OF LOCAL NOW: NEWS, TV & MOVIES, https://www.data.ai/en/apps/ios/app/local-now-news-weather-traffic/.

[18] DATA.AI, METRICS THAT MATTER FOR PRODUCT MANAGERS: THE FUNDAMENTALS - PART 1, https://www.data.ai/en/insights/market-data/metrics-that-matter-for-product-managers-the-fundamentals-part-1/.

[19] LOCAL NOW, SIMILARWEB, https://www.similarweb.com/website/localnow.com/#ranking.

18.    APIs "enable[] companies to open up their applications' data and functionality to external third-party developers, business partners, and internal departments within their companies."[20]

19.    Defendant integrates into its Website and App the Segment API ("Segment", an API owned and operated by Twilio Inc. ("Twilio").

20.    Twilio is "a customer engagement platform used by hundreds of thousands of businesses and more than ten million developers worldwide to build unique, personalized experiences for their customers."[21]

21.    Twilio powers this platform through the Segment API, which offers "world-class customer data infrastructure, so [developers] can design hyper-personalized, omnichannel campaigns across all channels."[22]

22.    In particular, once integrated into a developer's mobile application, the Segment API provides Twilio's platform with "customer identification and segmentation"[23] and does this by "collecting and connecting data from other tools and aggregating the data to monitor performance, inform decision-making processes, and create uniquely customized user experiences."[24]

---

[20] APPLICATION PROGRAMMING INTERFACE (API), https://www.ibm.com/cloud/learn/api.

[21] Glen Weinstein, *What is Twilio? An introduction to the leading customer engagement platform*, THE CURRENT (Nov. 29, 2021) (written by Twilio's Chief Customer Officer.)

[22] TWILIO SEGMENT, TWILIO + SEGMENT ARE BETTER TOGETHER WITH TWILIO ENGAGE, https://segment.com/twilio/.

[23] INGRID LUNDEN, *Twilio Confirms It Is Buying Segment For $3.2b In An All-Stock Deal*, TechCrunch, Oct. 12, 2020, https://techcrunch.com/2020/10/12/twilio-confirms-it-is-buying-segment-for-3-2b-in-an-all-stock-deal/.

[24] INDICATIVE, SEGMENT.IO DEFINED, https://www.indicative.com/resource/segment-io/.

23.    The analysis found that when Local Now Service users with a free account watch a pre-recorded video on the Website, Defendant discloses to Twilio via the Segment API a user's (i) e-mail address, (ii) location information, (iii) user ID, and (iv) the title and URL of the video the user is watching, including the fact that the user actually viewed the video:



**Defendant's Disclosures to Twilio on the Website**

24.    The analysis also found that when Local Now Service users with a free account watch a pre-recorded video on either the iOS or Android version of the App, Defendant discloses to Twilio via the Segment API a user's (i) unredacted e-mail address, (ii) location information, (iii) user ID (and advertising ID for Android), and (iv) the title and URL of the video the user is watching, including the fact that the user actually viewed the video:



**Defendant's Disclosures to Twilio on the iOS App**



**Defendant's Disclosures to Twilio on the Android App**

**B.    Defendant Discloses Class Members' E-Mail Addresses To Twilio**

25.    An e-mail address is a unique string of characters which designate an electronic

mailbox.  As industry leaders,[25] trade groups,[26] and courts[27] agree, an ordinary person can use an e-mail address to uniquely identify another individual.  Indeed, there exist multiple services that enable their clients to look up who owns a particular e-mail address.[28]

26.    As the dynamic analysis established, Defendant discloses to Twilio, through the Segment API, a user's e-mail address when a user watches a pre-recorded video.

**C.    Defendant Discloses Class Members' Location Information To Twilio**

27.    As the dynamic analysis established, Defendant discloses to Twilio, through the Segment API, a user's geolocation.  Specifically, Defendant discloses a user's city location for iOS App users, and geolocation with nine decimal places of accuracy for Website and Android App users.  As to the latter, this means that Defendant is disclosing a user's location within less than forty feet.[29]

28.    "Geolocation is the identification of the real-world geographic location of an object."[30]  Geolocation identifies an object by "generating a set of geographic coordinates such a

---

[25] Allison Schiff, *Can Email Be The Next Big Online Identifier?*, Ad Exchanger (Aug. 25, 2020), https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/ (quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered to be PII, so as such it can never be a valid identifier for online advertising").

[26] NETWORK ADVERTISING INITIATIVE, NAI CODE OF CONDUCT 19 (2020), https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (identifying email as PII).

[27] *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual.").

[28] *See*, *e.g.*, EXPERIAN IDENTITY APPEND, https://docs.experianaperture.io/identity-append/experian-identity-append/overview/introduction/#reverse-email-append ("Reverse email append … allows you to input an email address and receive the name and address of the individual associated with that email.").

[29] James R. Schmidt, Jr., BSME, *GPS Coordinates: How Many Decimal Places Do You Need?*, DJS ASSOCIATES, https://www.forensicdjs.com/blog/gps-coordinates-many-decimal-places-need/.

[30] WHAT IS GEOLOCATION?, https://www.indicative.com/resource/geolocation/.

latitude and longitude through GPS and using the coordinates to determine a meaningful location."[31]

29.      In 2013, researchers conducted a study that analyzed mobility data for 1.5 million people and found they needed only four randomly chosen spatio-temporal points (points that represent the time and location of a specific event, such as watching a video) to uniquely identify 95% of the people (approximately 1.425 million out of 1.5 million) in the dataset.

30.      As Paul Ohm, a law professor and privacy researcher at Georgetown University Law Center, explained: "Really precise, longitudinal geolocation information is absolutely impossible to anonymize.  D.N.A. is probably the only thing that's harder to anonymize than precise geolocation information."[32]

31.      Companies collect and leverage a user's geolocation to maximize their advertising revenue.  As a *New York Times* article explained: "For brands, following someone's precise movement is key to understanding the 'customer's journey'—every step of the process from seeing an ad to buying a product.  It's the Holy Grail of advertising, one marketer said, the complete picture that connects all of our interests and online activity with our real-world actions."[33]

32.      Defendant's disclosure of e-mails in conjunction with geolocation to Twilio further allows specific users to be identified.  *See Saunders v. Hearst Television, Inc.*, --- F. Supp. 3d ---, 2024 WL 126186, at *3 (D. Mass. Jan. 11, 2024).  In addition, Defendant's disclosure of geolocation data to Twilio allows Defendant to (i) know the location of its users, and (ii) target

---

[31] WHAT IS GEOLOCATION?, https://www.indicative.com/resource/geolocation/.

[32] Stuart A. Thompson & Charlie Warzel, *Twelve Million Phones, One Dataset, Zero Privacy*, THE NEW YORK TIMES (Dec. 19, 2019), https://www.nytimes.com/interactive/2019/12/19/opinion/location-tracking-cell-phone.html.

[33] *Id.*

them with location-specific advertising, as set forth in more detail below.

**D.    Defendant Discloses Class Members' Video-Viewing Information To Twilio**

33.    As the dynamic analysis established, Defendant discloses to Twilio, through the Segment API, the full name of the video viewed by the user.  For instance, in the transmission to Twilio on the Website, the title of the video was "Tina Turner: Simply the Best."  The URL of that video is also disclosed for Website users:

```
path: /movies/tina-turner-simply-the-best
referrer: https://localnow.com/shows
search:
title: Tina Turner: Simply The Best | Local Now
url:
https://localnow.com/movies/tina-turner-simply-the-
best
```

34.    Defendant also discloses to Twilio "event data" or video interactions that demonstrate that the specific video was actually viewed.  For instance, for the Website transmission, the event is "Video Playback Started," as well as the title of the specific video that is being played:

```
event: Video Playback Started
type: track
title: Tina Turner: Simply The Best
content_type: movie
total_length: 2538.7827999999996
asset_id: 1876996A-C6F8-4F20-8AF6-3F3FB40CA2A3
content_vertical:
```

35.    While Defendant discloses a user's video-viewing information to Twilio in a separate transmission from the user's e-mail address and geolocation, an ordinary person can still easily link the two transmissions and identify which user watched what videos.

36.    *First*, the two transmissions that Defendant discloses to Twilio contain the same user ID (and anonymous ID).  For instance, for the Website transmission, the user ID in both transmissions is BFgKPidnU8WLpp0PaoFprjnItmxl:

```
URL: https://api.segment.io/v1/t          PostData:
PostData:                                      timestamp: 2024-02-05T19:23:34.786Z
  timestamp: 2024-02-05T19:23:02.137Z          userId: BFgKP1dnU8WLpp0PaoFprjnItmx1
  userId: BFgKP1dnU8WLpp0PaoFprjnItmx1         anonymousId: 216d369d-dde6-47de-8a4a-b7f2f2755884
  anonymousId:                                 event: Video Playback Started
  216d369d-dde6-47de-8a4a-b7f2f2755884         type: track
  event: Login Success                         title: Tina Turner: Simply The Best
  type: track                                  content_type: movie
  userId: BFgKP1dnU8WLpp0PaoFprjnItmx1         total_length: 2538.7827999999996
  email: prairie8370gmail.com                  asset_id: 1076996A-C6F8-4F20-8AF6-3F3FB40CA2A3
                                               content_vertical:
```

37.   *Second*, as the "timestamp" in both transmissions makes clear, the transmissions occur near simultaneously—here, within roughly 30 seconds of one another—allowing an ordinary person to easily link the two.

## IV.   DEFENDANT DISCLOSES CLASS MEMBERS' PERSONALLY IDENTIFIABLE INFORMATION TO THIRD PARTIES FOR THE PURPOSES OF MARKETING, ADVERTISING, AND ANALYTICS

38.   Defendant transmits its users' e-mail addresses, location information, and video-viewing information to Twilio via the Segment API so that Defendant can analyze user data, launch marketing campaigns, and target specific users or specific groups of users for advertisements.  All of this, especially in conjunction with Segment's marketing and advertising services, helps Defendant monetize the Local Now Service and maximize revenue by collecting and disclosing as much PII as possible to Twilio via the Segment API.

39.   Twilio entices developers to integrate the Segment API by underscoring its signature feature: "Engage."  Engage "uses Segment Identity Resolution to take event data from across devices and channels and intelligently merge it into complete user- or account-level profiles."[34]  This allows Twilio and Defendant to "understand a user's interaction across web, mobile, server, and third-party partner touch-points in real time, using an online and offline ID

---

[34] ENGAGE INTRODUCTION, SEGMENT, https://segment.com/docs/engage/.

graph with support for cookie IDs, device IDs, emails, and custom external IDs," which are all "matched to one persistent ID"[35]:



40.    Once Twilio has built these comprehensive user profiles for Defendant, Twilio can then "group customers based on commonly used methods: demographic, psychographic, and geographic"[36]:

---

[35]    IDENTITY RESOLUTION OVERVIEW, SEGMENT, https://segment.com/docs/unify/identity-resolution/.

[36]    CUSTOMER SEGMENTATION TOOLS | SEGMENT, https://segment.com/growth-center/customer-segmentation/tools-software/



41.     Twilio leverages these profiles to help website operators and/or app developers, like Defendant, enhance their marketing, advertising, and analytics efforts "by enriching dynamic/custom properties with profile traits in marketing tools."[37]

42.     Defendant discloses users' PII to Twilio, through the Segment API, so it can better target its marketing campaigns.  Defendant does this through Twilio's "Audience" feature, which "let[s] you group users or accounts based on event behavior and traits that Segment tracks."[38]

43.     In other words, Audience allows for targeted marketing at Engage profiles that fit specific parameters.  Defendant builds these marketing campaigns through Twilio's services.

44.     Defendant also discloses users' PII to Twilio, through the Segment API, so it can better target advertisements.  After Defendant discloses users' PII, Twilio compiles and transmits

---

[37] PROFILE API, SEGMENT, https://segment.com/docs/unify/profile-api/.

[38] ENGAGE AUDIENCE OVERVIEW, SEGMENT, https://segment.com/docs/engage/audiences/.

that information to other third parties "to personalize messages across channels, optimize ad spend, and improve targeting."[39]  These third parties include Facebook, Google, and Salesforce.[40]

45.     For instance, when Twilio transmits PII to Facebook, it sends "an expanded list of identifiers or traits to Facebook, so that Facebook can try to use these additional datapoints to match to their user profiles."[41]  The same goes for Google, with Twilio helping developers "run advertising campaigns without having to manually update the list of users to target in Adwords campaigns."[42]  Defendant utilizes Twilio to amplify its advertising campaigns.

46.     Defendant likewise discloses users' PII to Twilio, through the Segment API, so it can better measure and analyze the Local Now Service's performance.  Defendant does this by leveraging Twilio's "Audience" feature, which breaks down user profiles into a number of traits, like "total minutes watched."[43]

## V.     DEFENDANT KNOWINGLY DISCLOSES CLASS MEMBERS' PII TO SEGMENT

47.     Based on the above, it is abundantly clear that Defendant *intentionally* and *knowingly* discloses to Twilio Local Now Service users' personally identifiable information and video-viewing information.

48.     *First*, as outlined above, Defendant "knew that it was collecting data from users that identified personalized information about them because, in exchange for the data, [Twilio]

---

[39]  USING YOUR ENGAGE DATA, SEGMENT, https://segment.com/docs/personas/using-personas-data/.

[40]  *Id.*

[41]  PERSONAS FACEBOOK CUSTOM AUDIENCES DESTINATION, SEGMENT, https://segment.com/docs/connections/destinations/catalog/personas-facebook-custom-audiences/.

[42]  GOOGLE ADS REMARKETING LISTS DESTINATION, SEGMENT, https://segment.com/docs/connections/destinations/catalog/adwords-remarketing-lists/.

[43]  COMPUTED TRAITS, SEGMENT, https://segment.com/docs/unify/traits/computed-traits/.

provided [Defendant] with analytics allowing it to provide advertisements tailored to specific users." *Saunders*, 2024 WL 126186, at *4.

49.    Indeed, Defendant admits in its Privacy Policy (which is not "a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" under 18 U.S.C. § 2710(b)(2)(B)(i)) that "[t]hird-Party Processors acting on our behalf use various Internet technologies which help … track your usage behavior so that we can tailor information and advertisements to make your visits more enjoyable and meaningful."[44]    Further, Defendant delineates how "LN may work with a variety of advertisers, advertising networks, advertising servers, and analytics companies.  These advertisers, advertising networks, advertising servers, and analytics companies use various technologies, and technologies from third-party companies, to collect data in order to send (or serve) more relevant ads to users."[45]

50.    *Second*, common sense dictates that a sophisticated media industry leader like Defendant—who integrated the Segment API precisely for its marketing, advertising, and analytics capabilities—is fully aware of the scope of the data that Twilio collects.  Indeed, Defendant would need to contract with Segment specifically for their marketing, advertising, and analytics services, in order for the technologies here at issue to be implemented into the Local Now Service.

51.    Therefore, Defendant knowingly and intentionally provides personal information and video-viewing information to Segment for marketing, advertising, and analytics services.

## VI.    EXPERIENCE OF PLAINTIFF

52.    Plaintiff Matthew Marden is a resident and citizen of Marlborough, Massachusetts. In or around November 2023, Plaintiff Marden visited the Local Now Website and created a Local

---

[44] PRIVACY POLICY, https://localnow.com/resources/html/privacy_policy.html.

[45] *Id.*

Now account.  Shortly thereafter, Plaintiff used the Local Now Website and his Local Now account to watch various videos.  Plaintiff most recently watched a pre-recorded video on the Website, using his Local Now account, in or around December 2023.

53.     By creating a Local Now account, Plaintiff was able to receive a personalized Local Now experience and create a watchlist of content that he intended to view later, among other benefits.  Though his account was free of charge, Plaintiff was required to provide Defendant with his e-mail address in the sign-up process.  In addition, Plaintiff added his first and last name to his Local Now profile.

54.     At all relevant times, Plaintiff never consented to, agreed to, or otherwise permitted Defendant's disclosure of his PII to third parties, including Segment.

55.     Likewise, Defendant never gave Plaintiff the opportunity to prevent the disclosure of his PII to third parties, including Segment.

56.     Nevertheless, each time Plaintiff viewed a pre-recorded video on the Local Now Website, Defendant disclosed Plaintiff's PII to Twilio via the Segment API.  Specifically, Defendant disclosed Plaintiff's: (i) e-mail address, (ii) geolocation, (iii) user ID, and (iv) the title and URL of the video Plaintiff watched, including the fact that Plaintiff actually viewed the video.

57.     Using this information, Twilio was able to identify Plaintiff and attribute his video viewing records to an individualized profile of Plaintiff.  Indeed, even an ordinary person could identify Plaintiff using the data Defendant disclosed to Twilio.  Twilio compiled Plaintiff's PII and activity on the Local Now Website (including video-viewing information), which Defendant used and continues to use for marketing, advertising, and analytics purposes.

## **THE PARTIES**

58.     Plaintiff Matthew Marden is, and has been at all relevant times, a resident of

Marlborough, Massachusetts and has an intent to remain there, and is therefore a citizen of Massachusetts.

59.     Defendant Weather Group Television, LLC is a Georgia limited liability company with its principal place of business at 300 Interstate North Parkway SE, Atlanta, GA 30339. Defendant develops, owns, and operates Local Now, which is used throughout the Commonwealth of Massachusetts and the United States.

<u>**JURISDICTION AND VENUE**</u>

60.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

61.     This Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

62.     Defendant is an "unincorporated association" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Defendant is therefore "a citizen of the State where it has its principal place of business [Georgia] and the State under whose laws it is organized [Georgia]." *See* 28 U.S.C. § 1332(d)(10).

63.     This Court has personal jurisdiction over Defendant because Defendant specifically and knowingly targeted Massachusetts residents with advertisements based on their Massachusetts location.  As noted above, Defendant prompts all those who access the Local Now Service to provide their location.  Defendant then discloses to Twilio via the Segment API either a user's precise geolocation or the city the user is located in, which is still sufficient for Defendant to know its conduct is affecting Massachusetts users of the Local Now Service.  Indeed, Defendant

explicitly tells its prospective advertising partners that "[c]overing over 220 cities … [p]artnering with Local Now enables you to be part of your target audience's daily routine, no matter *where* they are."[46]  As a result of this location-based advertising, Defendant receives substantial revenue. And, Plaintiff's claims relate to Defendant's collection of PII and video-viewing information— including location information—in Massachusetts.   Accordingly, personal jurisdiction over Defendant is proper and comports with Due Process.  *See Rancourt v. Meredith Corp.*, 2024 WL 381344, at *4-11 (D. Mass. Feb. 1, 2024).

64.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

## CLASS ALLEGATIONS

65.    **Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States who used the Local Now Service to watch pre-recorded videos and had their PII transmitted to a third party (the "Class").

66.    Plaintiff also seeks to represent a subclass of similarly situated individuals defined as all persons in the United States who created a Local Now account, used the Local Now Website to watch pre-recorded videos with their Local Now account, and had their PII transmitted to a third party (the "Website Subclass").

67.    The Class and Website Subclass shall collectively be referred to as the "Classes."

68.    Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

---

[46] LOCAL NOW, ADVERTISING ON OTT, WEB & MOBILE, https https://localnow.com/pages/ott-web-and-mobile-advertising-with-local-now/ (emphasis added).

69.    **Numerosity (Fed. R. Civ. P. 23(a)(1)):**  At this time, Plaintiff does not know the exact number of members of the aforementioned Classes.  However, given the popularity of Local Now, the number of persons within the Classes is believed to be so numerous that joinder of all members is impractical.

70.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):**  There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

> (a)    whether Defendant collected Plaintiff's and the Classes' PII;
>
> (b)    whether Defendant unlawfully disclosed and continues to disclose Local Now users' PII, including their video viewing records, in violation of the VPPA;
>
> (c)    whether Defendant's disclosures were committed knowingly; and
>
> (d)    whether Defendant disclosed Plaintiff's and the Classes' PII without consent.

71.    **Typicality (Fed. R. Civ. P. 23(a)(3)):**  Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, watched videos on the Local Now Service (specifically, the Website) and had his PII collected and disclosed by Defendant to a third party, Twilio.

72.    **Adequacy (Fed. R. Civ. P. 23(a)(4)):**  Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA and its state-inspired offspring.  Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Classes.  Neither Plaintiff nor his

counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiff has raised viable statutory claims, of the type reasonably expected to be raised by members of the Classes, and Plaintiff will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Complaint to include additional representatives to represent the Classes, additional claims as may be appropriate, or to amend the definition of the Classes to address any steps that Defendant took.

73. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Classes could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action.

**CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF THE VPPA,**
**18 U.S.C. § 2710**

74. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75. Plaintiff brings this claim individually and on behalf of the members of the

proposed Classes against Defendant.

76.     Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as Defendant provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via the Local Now Service.

77.     Plaintiff and members of the Classes are "consumers" as defined by the VPPA. 18 U.S.C. § 2710(a)(1).   As to members of the Classes who downloaded the App, they are "consumers" because they downloaded, installed, and watched pre-recorded videos using the Local Now App. *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 487-89 (1st Cir. 2016).   As to members of the Website Subclass, they are "consumers" because they created an account with Defendant for the provision of video services, "provide[d] consideration in the form of" personal information and received benefits in exchange (*e.g.*, access to a watch list), and otherwise established a "commitment, relationship, or association" with Defendant. *Id.* at 488-89 (cleaned up).   Under the VPPA, therefore, Plaintiff and members of the Classes are "subscribers" of "goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).

78.     Plaintiff and members of the Class viewed pre-recorded videos using Local Now. During these occasions, Local Now disclosed Plaintiff's and Class Members' PII to Twilio, a third party.   Specifically, Defendant disclosed Plaintiff's and members of the Classes': (i) e-mail address, (ii) location information, (iii) user IDs, and (iv) the title of the videos Plaintiff and members of the Classes watched, including the fact that Plaintiff members of the Classes actually viewed the videos.

79.     The information disclosed by Local Now constitutes "personally identifiable

information" because it makes it "reasonably and foreseeably likely to reveal which [Local Now] videos [Plaintiff and members of the Classes] [] obtained." *Yershov*, 920 F.3d at 486; *see also* 18 U.S.C. § 2710(a)(3). Indeed, the information disclosed by Defendant to Twilio enables even an ordinary person to identify which specific videos were watched by Plaintiff or specific members of the Classes.

80.    Local Now's transmissions of Plaintiff's and Class Members' PII to Twilio via the Segment API constitute "knowing[] disclosures" of Plaintiff's and members of the Classes' "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

81.    Plaintiff and the Class Members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties, including Twilio.

82.    Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, Defendant's disclosures to Twilio were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

83.    On behalf of himself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    An award of statutory damages to the extent available;

(e)    For punitive damages, as warranted, in an amount to be determined at trial;

(f)    For prejudgment interest on all amounts awarded;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: May 21, 2024                     Respectfully submitted,

**REARDON SCANLON LLP**

By: */s/ James J. Reardon, Jr.*
      James J. Reardon, Jr.

James J. Reardon, Jr. (BBO #566161)
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-Mail: james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel*
Max S. Roberts*
Victoria X. Zhou*
Kyle D. Gordon*

1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com
          mroberts@bursor.com
          vzhou@bursor.com
          kgordon@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*